**In re Petition for DISCIPLINARY ACTION AGAINST Eric A.L. De RYCKE, an Attorney at Law of the State of Minnesota.**

No. C1–98–589.

Supreme Court of Minnesota.

May 23, 2002.

Edward J. Cleary, Director, Craig D. Klausing, Senior Assistant Director, Saint Paul, for Petitioner.

Eric A.L. De Rycke, Lake Benton, Attorney Pro Se.

## OPINION

PER CURIAM.

We consider the appropriate discipline for an attorney who has failed to cooperate with the terms of his court ordered disciplinary probation despite having been publicly reprimanded in the past for failing to comply with the terms of his probation and having had his probation extended as a result of his noncompliance. We conclude that indefinite suspension from the practice of law without the eligibility to apply for reinstatement for a minimum of 6 months is the appropriate discipline to be imposed.

Respondent Eric A.L. De Rycke was admitted to practice law in Minnesota in 1974. On January 28, 1981, De Rycke was issued a warning for representing a criminal defendant in Pipestone County while serving as a prosecutor in Murray County.

On April 21, 1998, we suspended De Rycke from the practice of law for 90 days for failing to timely file state and federal individual income taxes and pay taxes, failing to timely file state and federal employer quarterly withholding returns, client neglect and noncommunication in four matters, and noncooperation with the Director of the Office of Lawyers Professional Responsibility (Director) in his investigation of those matters. *In re De Rycke,* 577 N.W.2d 922, 922–23 (Minn.1998). On August 26, 1998, we reinstated De Rycke, placing him on 2 years' supervised probation and requiring him to cooperate fully with the Director in any efforts to monitor De Rycke's compliance with probation and to respond promptly to the Director's correspondence by the due date. *In re De Rycke,* 583 N.W.2d 281 (Minn.1998).

De Rycke did not comply with the terms of his probation. Specifically, he failed to provide an inventory of client files, a report concerning his progress in reaching an agreement with the IRS and Minnesota Department of Revenue, and requested trust account records. He also failed to cooperate with the disciplinary investigation of an overdraft of his trust account occurring after he was placed on probation. On July 10, 2000, the Director filed his first petition for revocation of De Rycke's probation. On April 30, 2001, De Rycke unconditionally admitted the allegations of the petition and stipulated to an extension of his probation. On June 5, 2001, we publicly reprimanded De Rycke and extended his probation for an additional 2 years. *In re De Rycke,* 627 N.W.2d 331, 333 (Minn.2001).

On June 13, 2001, the Director wrote to De Rycke, informing him of the court order and requesting that he provide certain documentation, including an agreement for supervision and copies of his written office procedures. De Rycke failed to respond. De Rycke's probation supervisor also wrote to De Rycke on three different occasions during June and July 2001. De Rycke did not reply to any of these letters. On July 13, 2001, the Director wrote a letter reminding De Rycke of his obligations under his probation and informing him that he had 7 days to provide the information requested in the June 13 letter. In a letter postmarked July 23, 2001, but dated June 18, 2001, De Rycke wrote to the Director's office and requested a 7-day extension "to handle all the matters." The Director wrote De Rycke on July 27, 2001, informing him that an extension could not be agreed to until there was "some minimal level of cooperation" with the terms of his probation. De Rycke never responded to this letter.

On August 14, 2001, the Director wrote a letter instructing De Rycke to appear at a meeting on August 27, 2001, to discuss his failure to comply with the terms of his probation. De Rycke did not respond and did not appear at the meeting. The Director again wrote De Rycke on August 28, 2001, this time by both certified and regular mail, instructing him to appear for a meeting on September 5, 2001. De Rycke again failed to respond or appear at the meeting.

On or about September 17, 2001, De Rycke telephoned the Director and spoke with a senior assistant director. The two agreed that De Rycke would provide the requested documentation by September 27, 2001, and would attend a meeting on October 3, 2001. De Rycke failed to provide the information and called on October 3, 2001, telling the assistant director that he could not make it to the meeting because of car problems. De Rycke also said that he would have the requested information to the Director's office by October 4,

2001. De Rycke never provided this information.

On November 8, 2001, the Director served De Rycke with a notice and petition for revocation of probation and for further disciplinary action. De Rycke failed to file an answer to this petition. On January 9, 2002, the Director served and filed a motion for summary relief pursuant to Rule 13(a), Rules on Lawyers Professional Responsibility (RLPR). On January 17, 2002, we issued an order indicating that the allegations contained in the petition for revocation of probation and for further disciplinary action against De Rycke were deemed admitted and that either party could submit written proposals to the court regarding the appropriate discipline to be imposed. De Rycke did not respond to the order. Accordingly, the allegations in the petition shall be deemed admitted, and we need only decide the appropriate discipline for respondent's misconduct. *In re Danielson*, 620 N.W.2d 718, 720 (Minn.2001); Rule 13(b), RLPR.

The purpose of attorney discipline is not to punish the attorney but to protect the courts, the public, and the legal profession, as well as to guard the administration of justice. *In re Bishop*, 582 N.W.2d 261, 263 (Minn.1998). " 'In determining the appropriate discipline, the court considers: (1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession.' " *Id.* (quoting *In re Madsen*, 426 N.W.2d 434, 436 (Minn.1988)). In our efforts to impose appropriate and fair sanctions, we often consult cases involving similar misconduct. *Bishop*, 582 N.W.2d at 263. While prior decisions provide guidance, we examine each case individually and impose an appropriate discipline based on the facts of the case and any aggravating and mitigating circumstances that may exist.

*In re Hoedeman*, 620 N.W.2d 714, 717 (Minn.2001).

Attorneys on probation should be especially careful to comply with the rules of professional conduct. *Danielson*, 620 N.W.2d at 721. Noncooperation with probation monitoring is, by itself, a violation of rules of professional conduct. *Danielson*, 620 N.W.2d at 721; *Hoedeman*, 620 N.W.2d at 717. Specifically, failure to respond to the Director's demand for information in connection with a disciplinary matter violates Minn. R. Prof. Conduct 8.1(a)(3). Furthermore, it is the duty of any attorney who is the subject of a proceeding under the RLPR to comply with reasonable requests, including requests to furnish documents and to appear at conferences and hearings. Rule 25(a), RLPR.

When an attorney fails to comply with his court ordered probation, that attorney may be indefinitely suspended from the practice of law. *Danielson*, 620 N.W.2d at 721; *Hoedeman*, 620 N.W.2d at 718. In *Hoedeman*, an attorney, while on private probation for trust account violations, failed to (1) cooperate with his probation monitoring, (2) cooperate with a disciplinary investigation, (3) comply with trust account rules, and he also (4) repeated the trust account misconduct that led to his probation. 620 N.W.2d at 717. We held that this misconduct demonstrated "a continuous pattern of unwillingness to cooperate with the disciplinary process and to comply with the rules of professional conduct * * *." *Id.* at 718. Accordingly, we indefinitely suspended Hoedeman. *Id.*

In *Danielson*, we dealt with an attorney who had stipulated to being placed on private probation for client neglect and noncommunication, failure to satisfy a judgment, and failure to timely file tax returns.

620 N.W.2d at 719–20. Danielson failed to comply with the terms of her probation and, as a result, we suspended her indefinitely. *Id.* at 720–21. Like De Rycke, the only new misconduct was Danielson's failure to cooperate with the attorney discipline process. *See id.*

 Here, De Rycke's misconduct included his repeated failure to respond to the Director's requests, supply the information requested, and attend meetings to discuss the terms of his probation. Each of these failures violated the terms and conditions of his probation. De Rycke's failure to cooperate initially began in 1998, continued after he was suspended and placed on probation on April 21, 1998, and has persisted despite the fact that he was publicly reprimanded in June 2001 for, among other things, failing to cooperate with the Director. This evidence shows a pattern of De Rycke failing to cooperate with the terms of his probation. While the only new misconduct is De Rycke's failure to communicate and cooperate with the Director, his original discipline was for client neglect and noncommunication, as well as for failing to timely file state and federal individual income taxes and pay taxes and failing to timely file state and federal employer quarterly withholding returns. Furthermore, De Rycke's disciplinary history is more extensive than that present in either *Danielson* or *Hoedeman.* De Rycke has already been suspended for 90 days and been placed on public probation twice. Under these facts, we conclude that indefinite suspension from the practice of law without eligibility to apply for reinstatement for a minimum of 6 months is appropriate.

Accordingly, we order that:

1. Respondent Eric A.L. De Rycke is hereby indefinitely suspended from the practice of law pursuant to Rule 15(a)(2), RLPR and shall be ineligible to apply for reinstatement for a minimum of 6 months;

2. De Rycke shall pay $900 in costs and disbursements to the Director pursuant to Rule 24(a), RLPR; and

3. Before reinstatement to the practice of law, De Rycke shall provide proof of fitness to practice law by complying with the petition and hearing requirements of Rule 18(a)–(d), RLPR and the written examination and continuing legal education requirements of Rule 18(e), RLPR.

So ordered.